UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JAMAL EUBANKS, as Administrator of the Estate of
JACE EUBANKS deceased, and J.E. an infant, by his
father and natural guardian JAMAL EUBANKS, and
JAMAL EUBANKS, individually,

                                Plaintiff,

               -against-

THE CITY OF NEW YORK,  NEW YORK CITY
ADMINISTRATION FOR CHILDREN'S SERVICES,
David Hansell, former Commissioner, ACS,  JOHN and
JANE DOES, said names being fictitious and intended to
represent individual officers, members, agents, servants
and/or employees of the New York City Police
Department, and JOHN and JANE ROES, said names
being fictitious and intended to represent individual
attorneys, caseworkers, investigators youth development
specialists, members, agents, servants and/or employees of
the New York City Administration for Children's Services,
(collectively referred to as the "Defendants")

                           Defendants.

-------------------------------------------------------------------X

**Civil Action No.:**

**VERIFIED COMPLAINT**

**PLAINTIFF DEMANDS A JURY**

       Plaintiff JAMAL EUBANKS, as Administrator of the Estate of JACE EUBANKS deceased, and J.E. an infant, by his father and natural guardian JAMAL EUBANKS, and JAMAL EUBANKS, individually, by their attorneys, THE COCHRAN FIRM, as and for a Verified Complaint herein, respectfully set forth and allege:

## PRELIMINARY STATEMENT

      1.    This is a civil rights action brought by Plaintiff, JAMAL EUBANKS, as Administrator of the Estate of JACE EUBANKS deceased, and J.E. an infant, by his father and

natural guardian JAMAL EUBANKS, and JAMAL EUBANKS, individually, which seeks damages and redress for the defendants' violation, under color of state law or action, of the rights of the plaintiff secured by 42 U.S.C. 1983, the Due Process Clause of the Fifth Amendment and of the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of New York and or The City of New York.  The Eubanks children and their father were victims of the notoriously inept Administration for Children's Services and The City of New York. After numerous failures of the city to protect the most innocent and vulnerable among us, our children, over decades, the City let Jace Eubanks and his younger brother suffer a similar fate.

Due to the customs, practices and policies of ACS which allow children who have been the subject of abuse reports and who exhibit clear signs of being physically abused, The City allowed Jace and his brother to remain in the custody and care of a known violent child predator following such a report.  Jace's day care provider and a mandatory reporter under NY law made a complaint that Jace showed injuries and was a suspected child abuse victim.  This complaint was investigated by ACS and the NYPD's special victim's bureau.  Despite these agencies having knowledge that one of the Children's care takers was a known violent child abuser and despite visualizing multiple injuries to the children upon inspection, with deliberate indifference these agencies failed to remove the children from danger and allowed Jace to be violently and viciously tortured resulting in his death.  This lawsuit seeks redress for these illegal actions and a change to the policies and customs that have led to the deaths of too many of our at-risk children.

2.     In fact, during the one-month period from August 11, 2021, to Jace's death on September 12, 2021, there were four killings of innocent children that these defendants failed to prevent.  Seven-year-old Julissia Batties, 15-month-old Legacy Beauford, four-year-old Aisyn Gonzalez and Jace were all killed after ACS, The City of New York and Defendant Hansell were

informed about suspected child abuse by their care-takers.  This lawsuit seeks to put an end to the deliberately indifferent policies related to protecting the at-risk children, training those charged with saving the at-risk children and supervising those who are entrusted to protect the at risk children.

## NATURE OF THE CLAIMS

3.  This is a civil action for compensatory, injunctive, punitive, and exemplary damages for the constitutional violations, negligence, recklessness, and carelessness of the Defendants, which ultimately caused the Decedent's wrongful death.

4.  This action is to redress the deprivation under the color of statute, ordinances, regulation, custom or usage of a right, privilege and immunity secured to the Decedent by the United States Constitution, particularly, the 1st, 5th and 14th Amendments, 42 U.S.C. Sections 1983 and 1988, Monell, and the laws and statutes of New York State.

5.  This action arises out of incidents occurring within or about August 26, 2021, through September 12, 2021, which resulted in the decedent's death on September 12, 2021.

6.  Defendants' conduct was knowing, malicious, wanton and in reckless disregard of the Decedent's rights.  As a result of the Defendants' conduct, the Decedent suffered serious physical injuries, which ultimately killed him.

## JURISDICTION & VENUE

7.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 (1-4) and 2202 as this case involves a federal question based on the Decedent's protected rights under the United States Constitution, particularly the 5th and 14th Amendments, 42 U.S.C. §§ 1983 and 1988, and Monell. Plaintiffs further invoke the supplemental jurisdiction of this Court to

adjudicate state law claims pursuant to 28 U.S.C. § 1367.  The matter in controversy exclusive of interest and costs exceeds $100,000 (one hundred thousand dollars).

8.      Venue is proper in this district under 28 U.S.C. § 1391 (b).

## PARTIES

### JAMAL EUBANKS

9.       Plaintiff JAMAL EUBANKS (hereinafter "Plaintiff" or "Mr. Eubanks") resides at 655 Barbey Street, Apt 1R, located in Brooklyn, New York, 11207.

10.     Plaintiff is the father of the decedent Jace Eubanks and the infant J.E.

11.     As their father, Mr. Eubanks had and has regular and consistent co-parenting with his still living son J.E. and had such co-parenting with his deceased son Jace while he was still alive.

12.     Mr. Eubanks supports and supported his children financially, emotionally and psychologically throughout their lives since birth.

13.     Mr. Eubanks loves his two sons and maintained a father son bond with both throughout their lives including with J.E. to the present time.

14.     On May 6, 2022, Plaintiff was duly appointed Administrator of his late son's Estate by Order of the Surrogate of Kings County.

### JACE EUBANKS deceased

15.     The decedent JACE EUBANKS (hereinafter referred to as the "Decedent"), was a minor, having been born on XX/XX/2017, who then resided at 414 Baltic Street, Apt. 4F, Brooklyn, New York.

### J.E. an infant

16.     The infant J.E (hereinafter referred to as the "Infant"), is a minor, having been born on XX/XX/2015, who then resided at 414 Baltic Street, Apt. 4F, Brooklyn, New York.

17.     The Infant is currently in foster care.

**Defendants**

18.     Defendant CITY OF NEW YORK (hereinafter "CITY") is a municipal corporation duly existing under and by virtue of the laws of the State of New York and maintains its principal place of business at 100 Church Street, New York, New York 10007. As part of its function, the City of New York operates the New York City Police Department (hereinafter "NYPD"), the New York City Special Victims Unit (hereinafter "SVU"), and the New York City Administration for Children's Services ("ACS"). In this capacity, its employees who were involved in the incident at issue are named in this Complaint.

19.     At all times relevant hereto Defendant David Hansell was the Commissioner in charge of ACS which was, and is, a municipal agency within New York City and maintains its principal place of business at 150 William Street, in New York, New York, 10038. At all times relevant hereto, Defendant Hansell was responsible for training, hiring, supervising, disciplining and retaining the officials, agents and employees of ACS. In this capacity, he was acting under the color of State law in the course and scope of his duties and functions for City of New York.  In this capacity he was charged with developing policy for the protection of children, training and supervising agents, servants, employees, and officials of ACS and otherwise performed and engaged in conduct incidental to the performance of the agencies functions.

20.     At all times relevant hereto Defendant CITY was, and is, authorized by law to maintain, supervise and control  ACS which acts as its agent in the area of protecting the safety and welfare of children within New York City and providing parents, foster parents, foster care

agencies, and its own employees with the resources and guidance to carry out its mission to protect children from child abuse and/or neglect within its jurisdiction, and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of Defendant ACS and the employment of attorneys, investigators, case workers, and others as said risk attaches to the public consumers of the services provided by Defendant ACS.

21.     At all relevant times, Defendants "JOHN AND JANE DOES" were police officers and/or employees of the NYPD, and representatives of the City of New York, and they directly participated in the unlawful activity that is the subject of this Complaint.

22.     At all relevant times, Defendants "JOHN AND JANE ROES" were individual attorneys, caseworkers, investigators, youth development specialists, members, agents, servants and/or employees of ACS, and representatives of the City of New York, and they directly participated in the unlawful activity that is the subject of this Complaint.

## PROCEDURAL REQUIREMENTS

23.     Within the requisite time period, a Notice of Claim was filed against the City of New York, New York City Police Department, and the New York City Administration for Children Services on October 20, 2021.

24.     At least thirty (30) days elapsed since Plaintiff filed a Notice of Claim, and the Defendants have not adjusted the same.

25.     Oral Examination of the Plaintiff was held on April 28, 2022, in compliance with Section 50-H of the General Municipal Law.

26.     All conditions and requirements precedent to the commencement of this action have been met.

## FACTUAL ALLEGATIONS

27.     The Decedent and the Infant (collectively referred to as "the Children") were sibling brothers.

28.     On or about September 12, 2021, and prior thereto, the Children were under the care of their mother, Rickia Duvalle ("Ms. Duvalle") and her boyfriend, Jerimiah Johnson ("Mr. Johnson"), at Ms. Duvalle's residence, located at 414 Baltic Street, in Brooklyn, New York.

29.     On information and belief, on August 26, 2021, a mandated reporter, under NY State Law, who was employed by the Children's daycare center, Strong Place for Hope Day Care, located at 595 Clinton Street, in Brooklyn, New York 11231, notified the agents, servants or employees of Defendant ACS, Defendant NYPD, and Defendant SVU that the Children had visible signs of physical injuries and suspected child abuse was occurring in the home.

30.     On information and belief, on August 26, 2021, Defendants Hansell, John Doe and Jane Doe (hereinafter "Does", or "Doe Defendants", employed by Defendant NYPD), and/or Defendants John Roe and Jane Roe (hereinafter "Roes", or "Roe Defendants", employed by Defendant ACS) went to Ms. Duvalle's residence in Brooklyn, New York. Defendants brought the Children, Ms. Duvalle, and Mr. Johnson into the Defendant ACS's office in Brooklyn to question them about the Children's physical injuries that were reported by the mandated reporter. Defendants also questioned them about scars, bruises and injuries noted on Decedent including his black eye, and numerous marks on his body—specifically his foot, the side of his rib, and on his chest that had not initially been reported but were noted during the interview.

31.     During the interview of the Children, defendants Roes and Does promised the children that they would protect them from harm, that they would be there to prevent any injuries from happening to them in the event that someone tried to hurt them and that they would stop anyone, including Mr. Johnson from injuring them in the future.

32.     The promises made by the Roes and Does defendants to the Children regarding the promise to keep the two of them safe from all harm was not something that was owed to the public in general but was a special duty created by the municipal defendants just for the Children.

33.     On information and belief, after making these promises, and after the questioning, Defendants unreasonably and with gross negligence and deliberate indifference concluded that the Children were under suitable care by Ms. Duvalle and Mr. Johnson, and thus left them in their care.

34.     At all times herein, the Does Defendants were acting under the color of law and following a practice, custom or policy of the City of New York in their official capacity as NYPD officers and employees of the defendant CITY.

35.     At all times herein, the Roes Defendants and Defendant Hansell were acting under the color of law and following a practice, custom or policy of the City of New York in their official capacity as agents, servants, or employees of defendant ACS.

36.     On information and belief, on August 29, 2021, the Doe Defendants and/or Roe Defendants went to Ms. Duvalle's residence in Brooklyn, New York for another visit. Ms. Duvall, Mr. Johnson, and the Children were all present.

37.     On information and belief, on August 29, 2021, Defendants unreasonably and with gross negligence and deliberate indifference concluded that the Children were again under suitable care by Ms. Duvalle and Mr. Johnson.

38.     Under the Defendant ACS's Parent's Guide to the Child Abuse Investigation, the Summary Guide for Mandated Reporters in New York State, and NY's Social Services law when ACS is notified by the New York State Central Register of Child Abuse and Maltreatment

regarding child abuse or neglect, Defendant ACS has a duty to "take steps to find out if there is some credible evidence of the alleged abuse or neglect."

39.     As part of this process and as part of the duty for Defendant Hansell, ACS and Defendants Does and Roes, must conduct an "evaluation of the child and children in the home" and are responsible for the "development of a plan to meet the needs of the child and family."

40.     In fulfilling this duty, Defendants ACS, Roes and Does were imbued with the power to remove the children from the home "if there is an immediate threat to the child's life or health."

41.     Mr. Johnson had a history of child abuse and over the course of the previous four years at least three reports of abusing children and committing acts of domestic violence that Defendants City of New York, Does, Hansell and Roes were aware.

42.     In fact, at the time of the report relating to the Children in this case, Mr. Johnson had multiple complaints of child abuse and domestic violence still open.

43.     As such, Defendants City of New York, Does, Hansell and Roes acted with gross negligence and deliberate indifference to the Due Process rights of the Children by allowing them to remain in the care and supervision of Mr. Johnson.

44.     In fact, during the questioning of Mr. Johnson, Defendants Hansell, Roes and Does learned that he had an outstanding warrant for violating conditions of his release relating to pending charges of domestic violence involving children.

45.     The Does, Hansell and Roes Defendants in violation of their own policies and the due process rights of the plaintiffs  concluded that the Children were in no danger despite being at home with Mr. Johnson who had a criminal past, violent propensities,  a history of child abuse, who violated conditions of his release related to claims of child abuse and domestic violence, and

in the face of a complaint of child abuse regarding the Children and clear and unmistakable evidence of physical injuries.

46.    This decision by the Does, Hansell and Roes Defendants was deliberately indifferent to the Due Process rights of the Children including without limitation their right to safety and security in their home and physical well-being in violation of the 5th and 14th Amendments.

47.    The decision to keep the Children in the care and custody of a known violent, child predator was not an isolated one but rather was done pursuant to a policy, practice, and/or custom of The City and ACS of allowing vulnerable children to remain under the supervision of known violent child predators after having complaints of child abuse made by mandatory reporters, in the face of clear and unmistakable injuries to the abused infants.

48.    This decision to keep the Children under the care of Mr. Johnson was done despite the fact that just in the days before Jace was brutally battered, ACS, The City of New York, Defendant Hansell, John and Jane Roes and Does were all aware of three defenseless kids in the same situation as the Children being killed by caretaker violence.

49.    The deliberately indifferent policies of the Municipal Defendants and Defendant Hansell resulted in the death of seven-year-old Julissia Batties on August 11, 2021. Julissia, who The City, ACS, Defendant Hansell and John and Jane Roes and Does knew suffered a recent black eye, and had been previously removed from her mother's care and household, was allowed to remain in the household only to be beaten to death by her caretaker older brother for taking his snacks.

50.    Julissia who had been removed from her mother's custody and care shortly after her 2014 birth and raised by her grandmother, was placed back in the mother's care by ACS in

2020, and left there despite numerous reports of child abuse to the City, Hansell, ACS and obvious physical injuries to Julissia's body and face.

51.     The deliberately indifferent policies of the Municipal Defendants and Defendant Hansell resulted in the death of 15-month-old Legacy Beauford who was beaten to death just days before Jace, on September 9, 2021, by his mother's boyfriend who was allowed to remain a caregiver by defendants following multiple complaints of child abuse.

52.     The deliberately indifferent policies of the Municipal Defendants and Defendant Hansell resulted in the death two days later, on September 11, 2021, of four-year-old Aisyn Gonzalez. Aisyn was killed with head and rib injuries from the beatings he received from her mom's boyfriend who was allowed to remain as a care-taker despite complaints of child abuse and evidence of physical injuries known to the defendants.

53.     The deliberately indifferent policies of the Municipal Defendants and Defendant Hansell resulted in the death of Jace one day later.

54.     The deliberately indifferent policies, practices and customs of the Municipal Defendants has resulted in the deaths of many other innocent children including Jace, Aisyn Gonzalez, Legacy Beauford and Julissia Batties. Joel Steinberg was allowed to kill his adopted daughter, Lisa, after the City was notified about suspected child abuse with nothing being done to protect her. Elisa Izquierdo was another child killed by her custodians after the City failed to respond adequately to the reports of child abuse and obvious physical signs of abuse leaving her to be violently and fatally thrown into a wall by her mother. Daytwon Bennett was allowed by the City to stay in the custody of his mother despite her eight-year history of alleged child abuse resulting in his abused, deceased body being covered in welts and severely emaciated. Sabrina Green was allowed by the City to be abused repeatedly by her sister, Yvette Green, until she was

killed, despite Sabrina's unexcused absences from school for weeks and months on end, a complaint made to ACS by a concerned citizen, and Yvette Green's long history of neglect and abuse of children.  Marchella Brett-Prince was allowed to be killed by her mother, Carlotta Brett-Prince, despite multiple complaints of child abuse.  At the time of her death in 2012, four-year-old Marchella weighed only 18 pounds.  Kyron Hamilton was allowed to remain in the custody of his caretaker by ACS after complaints were made and abuse discovered only to be violently killed. Nixzmary Brown, Sierra Roberts, Quachaun Brown, Myls Dobson, Sylena Herrenkind are just a few of the other innocent children who died due to the deliberate indifference shown by the City of New York through its practice, custom and policy of allowing children who are the subject of abuse complaints to remain in the care and custody of known abusers despite showing clear signs of injury and abuse.

55.     Recently, and also under the DeBlasio administration, six-year-old Zymere Perkins and three-year-old Jaden Jordan died due to the City's ACS response to complaints of child abuse. Following these tragic deaths, Defendant City of New York's own Department of Investigations (hereinafter "DOI") investigated ACS' handling of child abuse complaints and found that there were systemic failures in the City's response to complaints of child abuse.  With regard to the Zymere Perkins death, the City admitted that, "The death of Zymere Perkins is an unacceptable tragedy.  This mission of ACS is to ensure the welfare of every child, but in this case the City failed."

56.     Jaden Jordan also died during the DeBlasio administration due to The City's practice, policy and custom of allowing defenseless children to stay in the care and custody of known violent child predators after having been alerted to complaints of suspected child abuse.

57. In Jaden Jordan's case review, the DOI found that poorly trained staff and inadequate staffing in a unit that receives a high proportion of critical cases is a systemic problem."

58. Despite reports from the State and DOI that squarely identified systemic flaws in ACS' and The City's response to complaints of abused children, including inadequate training, supervision and discipline of those employees charged with responding, Defendant Hansell and the City failed to implement policies to address these systemic flaws.

59. The practice, policy and custom of inadequate training, supervision and discipline of those in the City charged with responding to child abuse directly led to the harm that was done to the Children in this case.

60. Showing complete and utter indifference to Mr. Johnson's arrest records and history of child abuse, Defendants herein allowed the Children to remain at home, recklessly under the care and supervision of Mr. Johnson despite the fact that they had received credible complaints of child abuse supported by physical evidence of injuries to the Children.

61. Defendants, Hansell, Roes and Does with gross negligence, recklessness and with deliberate indifference failed to follow their own procedures, and thereby allowed Mr. Johnson to continue to beat and torture the Children until Jace was murdered.

62. One of the policies that Defendants Hansell, Roes and Does failed to follow was requiring the Children to be seen by a medical doctor to assess the extent of the injuries that were plainly visible during their initial examination at ACS.

63. The failure to require medical clearance when suspected abused children present with open and obvious wounds was yet another practice, custom and or policy that routinely allows children victims of Child abuse to continue under the care of their abusers in violation of Due Process.

64.     Had this been done in this case, x-rays of the Decedent while he was still alive would have revealed that he had healing fractures of his ribs, skull, and other parts of his body and that he was a victim of Battered Child Syndrome.

65.     During the autopsy performed on the Decedent, it was determined that he had been brutally beaten over a significant duration and that he had suffered fractures that were in the process of healing at the time of his death.

66.     Those healing fractures would have been seen on x-ray prior to September 12, 2021, and would have conclusively shown that the Children were not in a safe environment as the report of suspected child abuse made on August 26, 2021, suggested.  The failure to get medical attention and medical clearance was thus deliberately indifferent to the due process rights of the Children especially in light of the visible injuries seen by defendants Hansell, Roes and Does both on August 26 and August 29, 2021.

67.     Another of the policies that Defendant Roes, Does and Hansell, ignored was to interview neighbors of the Children to obtain information about the abuse that was being inflicted upon the Children.

68.     Had they done so, Defendants would have been aware of the Battered Child Syndrome to which the Children were subjected.

69.     On information and belief, on September 12, 2021, Mr. Johnson lifted and threw the Decedent to the floor which caused severe physical trauma. A short time later, the Decedent died.  The cause of death was Battered Child Syndrome with blunt trauma to the torso.  Mr. Johnson was arrested and charged with the murder of Decedent.

70.     As a result of Decedent's wrongful death, the Infant suffered physical and emotional harm from being in the zone of danger and for grief associated with the loss of his brother.

71.     As a result of Decedent's wrongful death, Plaintiff has suffered emotional damages, loss of a familial relationship and grief from the loss of the Decedent and the harm done to the Infants, his two sons.

72.     Mr. Johnson is a resident of Brooklyn, New York. As alleged below, on or about September 12, 2021, Defendants CITY, Hansell, the Roes and Does Defendants, and their agents, servants and/or employees intentionally, recklessly, or gross negligently, allowed for Mr. Johnson to abuse the Children within the State of New York which resulted in the foreseeable and wrongful death of Decedent.

73.     Upon information and belief, Defendants CITY, Hansell, Roes and Does , and their agents, servants and/or employees were negligent, grossly negligent, reckless and careless in failing to provide for the protection of the Children, proper supervision, management, operation and control of their agencies and staff; in failing to take the necessary, required and reasonable steps to prevent the continued violent attacks, assault and battery of the Children; in failing to take the necessary and required precautions, so as to have avoided these assaults on the Children by a known violent offender, and in the exercise of due diligence and reasonable care, should have been known to be a risk of causing great harm to others, particularly the Children; failing to provide competent, qualified, trained and experienced employees to follow-up on the perpetrator who had existing open cases involving child abuse and a history of child abuse; in causing, permitting, and allowing the Children to be unprotected, contrary to good and acceptable policy and a reasonable

safety plan, and in failing to take reasonably prudent steps to safeguard the Children and to prevent the aforementioned occurrences.

74.     At all times relevant hereto Defendants were under a duty to safeguard the welfare of the Children.

75.     Defendants breached their duty to safeguard the welfare of the Children.

76.     Defendants failed to take appropriate action to provide the Children with the care necessary to keep them safe from harm, despite having been notified and aware of Mr. Johnson's open child abuse cases, his history of child abuse and his recent appearance in the lives of the Children who had heretofore not been reported to have been suspected victims of child abuse with open and obvious injuries

77.     Based on statements from witnesses, their own internal records and their own investigation, Defendants knew and/or should have known that by keeping the Children in the care of Mr. Johnson, they were in grave danger of losing their life in violation of the Due Process clause.

78.     Defendants acting with deliberate indifference, gross negligence and or recklessness, failed to take appropriate action to keep them safe from harm, despite having been notified and aware of the dangerous circumstances they were in while under the care and supervision of Mr. Johnson.

79.     The investigation that was conducted into the safety and welfare of the Children by virtue of an anonymous report from a mandated reporter at the Children's day care facility was done by and under the supervision of Defendants CITY,  Hansell, Roes  and Does , their agents, servants and/or employees.

80.     At the times and places aforesaid, these Defendants, their agents, servants and/or employees were under an obligation to use reasonable care to prevent harm and other abuses to

16

the Children by making sure that reasonable and proper procedures set out by law were followed. Specifically, under NY law, defendants were to conduct a proper and reasonable investigation within 24 hours of the reported abuse, a reasonable and proper determination was to be made regarding the Children's safety and a reasonable and proper plan for the Children's protection and safety was to be implemented.

81.     At all times mentioned herein, Defendants owed a duty to the Children, once they undertook a duty to protect them, not to do so with gross negligence, recklessly, or with deliberate indifference to the safety and security of the Children.

82.     At all times mentioned herein, Defendants owed a duty to the Children, once they undertook their duty to protect them, to take appropriate action to ensure that no further child abuse was occurring within their home.

83.     At all times mentioned herein, Defendants owed a duty to the Children to comply with those rules and regulations which were designed to protect them and others like them who were in a similar position.

84.     There was no fault, act or negligence on the part of Plaintiffs that caused and/or contributed to the injuries complained of herein.

**FIRST CAUSE OF ACTION**
**(Deprivation of Familial Relationship in Violation of the Due**
**Process Clause of the Fifth and Fourteenth Amendment, Pursuant to 42 U.S.C. §1983)**

85.     Plaintiff repeats, re-alleges, and incorporates each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

86.     By acting with deliberate indifference to the rights of the infant plaintiffs to be free from harm, Defendants City of New York, ACS, Hansell, Does and Roes caused the deprivation of the familial relationship between father and sons.

17

87. All of the aforementioned acts of Defendants were carried out under the color of state law and deprived the Plaintiff of the rights under the Due Process Clause of the Fifth and Fourteenth Amendments to a familial relationship and companionship guaranteed to citizens of the United States in violation of 42 U.S.C §1983.

88. All of the aforementioned acts of Defendants were carried out under the color of state law and were deliberately indifferent to and/or acted with reckless disregard of Plaintiff's rights under the Due Process Clause of Fifth and the Fourteenth Amendment to a familial relationship and companionship with Decedent.

## SECOND CAUSE OF ACTION
### (Violation of Due Process Right to Life and Liberty under 42 U.S.C. §1983 and NY State Social Services Law)

89. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

90. Each of the Defendants violated the Children's due process rights by acting with deliberate indifference in responding to complaints of child abuse, evidence of child abuse, visible injuries and by failing to follow proper investigatory procedures,, ignoring the record and history of child abuse of their adult caretaker and allowing said children to remain under the care and supervision of that adult, by failing to initiate proper Court proceedings for the care and protection of children in danger of child abuse, and by failing to properly train and supervise officers and caseworkers in the proper methods of preventing child abuse. These acts were deliberately indifferent to the constitutional rights of individuals like the Children herein and allowed for the Defendants to deprive the Children of their rights under both federal and state law. These acts were deliberately indifferent to the constitutional rights of the Children under the Fifth and Fourteenth Amendments to the United States Constitution and NY's Social Services Law.

91.     As a result, Jace was caused to be tortured until his wrongful death and J.E. was caused to be tortured and emotionally harmed by being in the zone of danger when his brother was killed.

## THIIRD CAUSE OF ACTION
### (Deprivation of Rights Under 42 U.S.C. §1983)

92.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

93.     All of the aforementioned acts of Defendants were carried out under the color of state law and deprived the Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fifth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C §1983.

94.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as officers, case workers, and youth specialists, with the entire actual and/or apparent authority attendant thereto.

95.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as commissioner, officers, case workers, and youth specialists, pursuant to the customs, usages, practices, procedures and the rules of New York State.

96.     Defendants, collectively and individually, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective authority, which is forbidden by the United States Constitution. As a result of the Defendants' conduct, Plaintiff was injured by the Decedent's death and is entitled to damages.

## FOURTH CAUSE OF ACTION
### (Monell under 42 U.S.C. §1983)

97.    Plaintiff repeats, re-alleges, and incorporates each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

98.    At all relevant times, Defendants CITY and/or ACS, maintained a policy, practice, and/or custom of failing to remove or otherwise protect children, who were the subject of child abuse complaints received by ACS who after investigating and finding credible evidence supporting those complaints including visible bruises and other injuries on the children and evidence of prior complaints of abuse relating to the caretakers, from those suspected of committing the abusive acts. .

99.    This policy, custom and/or practice has existed for decades and has resulted in notorious cases of child abuse including dozens of homicides of innocent and at risk children.

100.    These policies, customs and/or practices which include allowing agents and employees to follow improper investigatory procedures, ignoring an adult caretakers history of child abuse, failing to obtain medical clearance from trained medical personnel of suspected child abuse victims with visible injuries before allowing caretakers to remain as caretakers, , failing to initiate proper Court proceedings for the care and protection of children in danger of child abuse, and failing to properly staff,  train, discipline and supervise officers and caseworkers charged with investigating complaints of child abuse..

101.    These policies, customs and practices are deliberately indifferent to the rights of the plaintiffs herein and resulted in the injuries and wrongful death of Jace and the injuries suffered by J.E.

## FIFTH CAUSE OF ACTION
### (Wrongful Death under New York State Law)

102.   Plaintiff repeats, re-alleges, and incorporates each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

103.   The Defendants' wrongful acts of following improper investigatory procedures, ignoring an adult's criminal record and history of child abuse, allowing children to remain under the care and supervision of an adult with a criminal record and history of child abuse, failing to initiate proper Court proceedings for the care and protection of the children in danger of child abuse, and failing to properly train and supervise officers and caseworkers in the proper methods of preventing future child abuse caused the wrongful death of the Decedent.

104.   As a result of the foregoing, the Defendants are liable for the injuries and wrongful death of the Plaintiff's Decedent.

## SIXTH CAUSE OF ACTION
### (Negligent Training, Supervision, and Retention as to Defendants Hansell and City of New York)

105.   Plaintiff repeats, re-alleges, and incorporates each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

106.   At all relevant times, Defendants City of New York and Hansell had a duty to screen applicants for hire, retention, and/or discharge with the NYPD, ACS those employees who are not fit, suitable, properly trained and instructed, constituting a potential menace, hazard, or danger to the public or otherwise, those with vicious propensities and those with emotional, physical, psychological, racist, biased and/or physiological traits or characteristics unsuitable, unstable, or contraindicated for such employment.

107.   At all relevant times, it was the duty of Defendants City of New York and Hansell to hire, properly train, and retain personnel within the NYPD, its special victims unit, and ACS  to

sufficiently discipline, supervise, promulgate rules and procedures that would allow for reasonable investigations and the implementation of plans to  respond reasonably to complaints of child abuse..

108.    The City of New York, and Defendant Hansell were negligent in their hiring, training, supervision, and retention of those individuals charged with investigating allegations of child abuse and implementing plans to ensure the safety of those children who were identified as victims of child abuse in violation of NY State Law and the standards set forth under the Monell doctrine.  These violations were a direct and proximate cause of the injuries suffered by the plaintiffs herein..

109.    As a result of the Defendant's breach of duty, the Decedent was caused to suffer severe injuries and damage that led to his death, without fault or contribution by the Decedent.

## SEVENTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. § 1983)

110.    Plaintiff repeats, re-alleges, and incorporates each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

111.     Among the Defendants Roes and Does were supervisors who were assigned to supervise, properly staff and ensure that properly trained staff would investigate claims of child abuse and implement plans to ensure the safety of alleged victims of child abuse.

112.    These Supervisory Defendants violated their supervisory duties and the due process rights of the plaintiffs by allowing poorly staffed, poorly trained, and incompetent staff to conduct investigations into the complaints of child abuse regarding the infant plaintiffs herein.

113.    This supervisory failure was a cause of the harm that the plaintiffs suffered, including the torture and death of Jace.

## EIGTH CAUSE OF ACTION
### (Negligence of the Defendants)

114.   Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

115.   The Municipal Defendants, Does Defendants, the Roes Defendants and Defendant Hansell created a special duty and had a duty  to provide  care and safeguard the Children when they met with the infant plaintiffs in this case. The Defendants failure to protect the children, remove the Children from under the care and supervision of Mr. Johnson despite their knowledge of his criminal record, history of child abuse, observations of injuries to the childrens' bodies, failure to obtain medical clearance from trained medical personal regarding those observed injuries, was negligent and or grossly negligent and violated the provisions of the Social Services laws and other New York State laws.

116.   The Does Defendants, the Roes Defendants and Defendant Hansell negligently failed to provide for the safety, security, and protection of the Children by failing to comply with the state rules of conduct as it relates to the safety of children free from child abuse and/or neglect. These Defendants' failure to properly follow these rules was negligent and caused the Decedent's death.

117.   As a result of the foregoing, the City of New York is vicariously liable for the negligent acts of the Does Defendants the Roes Defendants and Defendant Hansell under *respondeat superior* liability.

118.   This action falls within one or more of the exceptions set forth in CPLR 1602.

119.   Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss,

irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants owed the Plaintiffs a non-delegable duty of care.

120.    Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

121.    Pursuant to CPLR Section 1602(2)(iv), the Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of each other and/or others who caused or contributed to the Plaintiffs' damages.

122.    Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiffs' injuries.

**WHEREFORE, THE ABOVE BEING CONSIDERED,** Plaintiff respectfully prays for the judgment against all Defendants, including compensatory damages, punitive damages against individual Defendants, any and all damages allowed by state and federal law including attorney's fees under 42 U.S.C. §1988, pre-judgment interest, post-judgment interest, and attorney's fees in an aggregate amount well above the jurisdictional amount needed to bring this case to this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages.

Dated:      October 18, 2022
             New York, New York

 

Yours, etc.,

_Derek Sells_

Derek S. Sells, Esq. (DS-8891)
Mina Q. Malik (MM-6457)
THE COCHRAN FIRM
Attorneys for Plaintiff
55 Broadway, 23rd Floor
New York, New York 10006
(212) 553-9215